The next case this morning is 524-0623 Beckham v. Petermann. Arguing for the appellant is Edward Unsell. Arguing for the appellee is Adam Johnson. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Morning, counsel. Appellant, if you are ready, you may proceed. Can you hear me? I'm, I'm, I'm a little. Yes. Okay. Yes. I'd be the first one to say that I'm, I'm closer to 50 years of practice in law than 45. And this is a little bit awkward for me. And I'm sure it's going to reflect in my presentation. And I want to apologize at the outset of that. May it please the court. Mr. Johnson, Eddie Unsell on behalf of Steve Beckham. If the court, with the court's indulgence, I didn't write this brief. I was selected to argue this because we thought this was going to be in person. And then of course, because the weather, it was changed to Zoom, which my young colleagues should have been the one doing this. So I'm going to take it in reverse order of the three issues that were briefed, the judgment, the J J and O V, the record reflects that the court graciously acknowledged that he might've made a few mistakes, but it didn't, did not believe that it warranted some of the remedies that we suggested the court should do based upon the mistakes. So we proceed to what happened? Well, this started out very badly with the Vordaer. As you all know, in fact, my office tried a case with Justice Barbaros, you know, years ago, he was quite liberal in allowing us on Vordaer, but some judges preferred to do the majority of it themselves. And as litigants, we just, we have to go along with the flow. In this particular case, Justice Threlkeld did, I would say 98% of the Vordaer. It was informed prior to that, that there was within the array, a lady who, I mean, keep in mind this case was five or six years old and what are the odds of this, but it was a former sister-in-law and it was a hotly contested divorce that the plaintiff underwent. And we figured that there may be prejudicial things stating. Justice Threlkeld acknowledged it and said, well, we're still going to inquire. Did the inquiry, the record reflects that the juror number, I believe she was 14, expressed negative comments. What I believe was error was that it went, he went one step further and inquired as to the plaintiff's credibility. Of course, she said, I wouldn't believe him. The record reflects exactly of what she said. We moved, we asked for an in-camera hearing. We moved for a mistrial at the time. The judge acknowledged, well, probably that, but I don't believe that what she said is going to rise to the level that we should have a mistrial. We go back out there. Well, and possibly he's correct, but what happened was then the juror sitting right next to her raised his hand and wanted to be heard. The judge asked, well, could this wait? No, I don't think he can. We go back in there and I'm not going to belabor, but he said, I don't have a clean slate here. I was moved by what she said. Of course, he was sitting right next to her. So, I mean, the record doesn't reflect anything other than what the record reflects, but he certainly acknowledged that he was poisoned by it and did not figure he could be fair. Again, we renewed the motion. We said, now you do have a problem because other jurors have expressed bias. The judge didn't do it, didn't inquire as to anybody else, and we proceeded. Let me stop you for a second, Mr. Dunsell. With regard to the sister-in-law, Juror 14, did I not read in either your brief or in your opponent's brief that you all had indicated to the court that there was a relationship and that you thought that she would be favorable to your client, and so you didn't ask that she be removed? No, we asked that she be removed, but you're right. This was the very initial one. Counsel objected and said, no, we'd like to hear what she has to say, and I don't blame counsel. I mean, if anything bad is going to come out, yes, we did say, fine, go ahead. That's fine. Were there any reason, I mean, if you all expected that the ex-sister-in-law was going to be perhaps hostile towards your client, was there any reason not to challenge them with a preemptory challenge or anything and remove them? Well, she was removed. This was during the Vordar. She wasn't a juror, oh, for God's sakes. No, no. I don't know. She might have been removed for cause, or maybe we did do a preemptory. I'm sorry. I have forgotten, but this was during the initial examination by the judge. I got you. Counsel, couldn't you have asked the trial court, anticipating that she might be hostile, to question her outside the presence of the denier initially, and you didn't do that, right? You know, we brought it to the attention of the judge, the familiar relationship, and we brought to the attention of the judge that it might not be favorable. I think for me to go further and procedurally tell the judge what to do, I think that that would have been rude. No, at that point in time, I think it's up to the court to procedurally say, well, wait a minute, maybe you're right. Let me bring her in here. So, no, I didn't request it, but I don't think it was my province to do that. I think that that, I'm sorry, I just think that would have been presumptuous, and I would have never done that. I would have never suggested to the court, because as you know, you set, you had your own rules on how to do things, and I just, I don't think you would have taken too kindly to a litigant telling you how to address that. We brought the situation to the court, and I think that that's all the mandated. All right, let me. You can continue. Okay. So, now we get to the point of the crux of this. Summary judgment, we had filed months before, asked for arguments. We finally, we get to this right at trial, and we argue. Okay. So, the summary judgment order speaks for itself. It is not temporary. It is not partial, as suggested. It is summary judgment, and it is very explicit. And more importantly, the language of this summary judgment that the court finally put into, and I would take a look at the data, but we were already in trial, and we wanted this. We wanted something in writing, and I pressed. I said, let's get this in writing. Let's get the summary judgment after we argued all the affirmative defenses that should not go in. You know, it was cross motions for summary judgment. So, we had a ruling, and we had a ruling, and it was an oral ruling discussed in chambers ad nauseum. We wanted it in writing. We submitted the writing. Council did not like what we submitted. So, the last editing of that summary judgment was by defense counsel. They give it to the court. The court signs it. The language in it is clear. It couldn't be any clearer. To say that we knew that the judge was struggling with concepts of negligence and proximate cause, well, yes, those were all debated. They were all talked about, and they were talked about until we get this order. We have an order that establishes liability. The case law is clear. I shouldn't even be here arguing this with you. It's clear. That it's a trial on damages only. You take a look at Malone. That's exactly what this should have been. We didn't have a hint. If we would have had a hint, then we would have called the state cop. The law of the case is decided in that summary judgment. And so, based on that, we prepare our offense, and we proceed accordingly. We don't get until we get to the jury instruction part, and we tender 102 on liability. The judge rejects it. And at that point, I left the conference because I knew this was going to be a mess, and it was a mess. There is no way on this type of case. All of you have tried cases. All of you have sat in front of juries. I would venture to say that you've never, in a liability case, especially an automobile accident case, ever gave both A and C instructions to the jury. Never. And it should not have been done here, particularly when all of the affirmative defenses were let out. They were not allowed. The court specifically would not let any evidence in. They tried to get evidence in as to the record. The court sustained our objection. So, the trial was run as it should have been. For the most part, liability was established. It's a damage-only trial. Only there at the end, then there's confusion. And counsel, being very well-versed and very good defense counsel, knew that there was this problem, this glitch with the court, and they pushed it. Maybe if the jury would have came back and wrote a zero on verdict form A, he might be okay. We still would have probably appealed. But here, clearly, clearly there was error. They wrote it on verdict form C, and it has risen. And counter to what Judge Threlkel said in the post-judgment motions, this is to the level where it has to be reversed. Go ahead. Judge McCanney, we can't hear you. I thought it was mine. Sir, please repeat it. Nothing now? You're real soft. I think you said something about the Stanfield case. No, it was Cancio. Now we can hear you. Yeah, Cancio case, C-A-N-C-I-O. Okay, well... All right, now let me just ask you this. In the Cancio case, the plaintiff submitted a modified 23.01, which said it has been determined that the defendant is liable for any injury which may have been proximately resulted from the occurrence. You need only decide what injuries to plaintiff resulted and what amount of money will reasonably compensate. Did you submit such a modified instruction? And if not, why not? Well, not the reason wasn't because of the summary judgment order. The judgment order says, and based on Malone, the judgment order says the defendant is liable. And moreover, what even distinguishes this from all the other representative cases, keep in mind, the defendant went past the time on which to have the plaintiff examined. There's no contrary evidence here. There's none. No contrary medical evidence was submitted at all on the part of the defendant. So proximate cause is not an issue. The only issue here is damages. That's a very pure, simple case. We don't have to get in any modified instructions on this. There's no reason to modify anything. If it's a case where a guy's going down the road, carrying furniture, his bindings break, and he scatters furniture all over the road, causing people to stop and swerve, and the plaintiff gets rear-ended by a semi who leaves the scene. I mean, that's it. That's the facts. And the judge found that for him not securing his property appropriately, he was liable. So then it just goes now. If there would have been other medical evidence put in, maybe, but there wasn't. The only evidence was the original orthopedic surgeon. That's all that went to the jury. Now, the jury could have chose not to put a lot of weight on what the doctor says about the need for future surgery. The jury, within its own experience, could have said, you know, this case is a long time. We're four or five years. He's worked most of this time. Maybe he really doesn't need it. I mean, the jury could have, in their own, concluded that and wrote a low damage award. That's true. But they would have never wrote it on verdict form C. And that's the confusing aspect of that that's reflected in the verdict. We should not have been in there. Liability is not an issue, I'm sorry, because of the summary judgment. Order in and of itself. Read the order. I mean, it's plain. And the order, like I said, was finally submitted by by defense. That's. Justice Von, any questions? Just seemed to me throughout his medical treatment over and over and over, he told the medical providers, I'm not experiencing any pain. I'm not having any problems with an accident. One time he did discuss pain. It was because he had hurt his foot racing a bicycle downhill. I don't see on the record where he notified the providers he was experiencing any pain from the accident. Well, no sustained pain. Yes, I agree. I mean, that was that was the problem with it. But surely initially there was pain and there was initial there was there was enough. There was medical in there, your honor, where there should have been. But for this confusion with the liability, there should have been an award. Should they have awarded the future surgery? Because if you Dr. Lee's deposition, he stated that he needed the future surgery and and that it that it was the result of this accident. But in the affirmative defenses that were filed, you know, they wanted to get in other accidents of this. This was all stopped by the judge. The judge says, no, you're not getting into anything. So the only thing that think about this, the only thing that the jury had was this guy's liable and this is the the medical from the plaintiff. That's it. And what medical bills he submitted. I mean, you're right. The residual effect of that, but certainly that they would have awarded the medical bills. Yeah, I'm not saying that that it shouldn't have been a damage award. That's that was clear. I mean, if it wouldn't have been, we probably wouldn't have tried the case. But but the point is, what goes to the jury and what goes to the jury is, first of all, the court's ruling, not the admission, because they didn't admit it. The court ruled he's liable. Bam. You don't move off of that. You don't you don't start arguing approximate cause and and confusing. The court was confused. The defense knew that and used that confusion. And here we are now that that you will not find a case where verdict form C was ever introduced. It should have been a that could have argued exactly what you said. Hey, look, he wasn't in much pain. The guy worked. He's been working for five years. I mean, how how hurt could he be? I mean, that's your argument. And then a jury goes back and says, yeah, you know, the right they give him his medical. It seems to me like the jury found the defendant or the plaintiff not credible. He said his car was totaled and crushed up like a soda can. And the pictures did not reflect that. And he says, I had ongoing pain. But the medical records show he never complained of any pain. And almost everything he said at trial was belied by the the medical records and the pictures and everything else. It just seems like a determination. And they found him not believable. They found him. And in my argument, they found him not believable, I believe, because of the tainted statements in the vernacular that that that is what I believe it started. But, yes, there was one picture. You know, if liability is going to be an issue, then we're going to have more pictures than what was that. I mean, why? I mean, he was hit by a the back of it. It's a big, heavy van. I think we did bring that out. It was it was a fair jolt. But why do we go to that point? You know, as as litigants, liability has been established. You're right. Again, it should have been diminished. You make it you make perfect points. But but they they say that on verdict form a your honor. They write that down on damages. We say, yeah, you don't you don't get these damages, but it's not a zero. It's it's not a zero. And they were confused because by finding verdict by signing verdict form C, they determined liability and liability was not within their profits to determine, sir. Thank you. Thank you. Sorry, Justice McKinney, I can't hear you. Still not hearing it all. But no, I do not have any other questions. Okay, I'm done. You may proceed. Thank you. May it please the court. Your honors, my name is Adam Johnson. I represent the defendant and appellee, Don Peterman in this case. There are three issues before the court, a claim of error in jury instructions, a claim of error related to voir dire and plaintiff's combined motion for a new trial in J.N.O.V. I don't think any of those claims have any merit. And we'd ask the court to affirm the lower court. I'll take the issues in the order that they were presented in the brief and begin with instructional error. Plaintiff's main claim throughout their appeal is that the trial court entered a finding not only just that the accident with plaintiff in the vehicle traveling behind plaintiff was caused by the negligence of the defendant, but plaintiff claims the trial court entered a finding at summary judgment finding that the plaintiff sustained injuries as a result of the negligence of the defendant. So not just the cause of the accident, but plaintiff claims that judge Threlkeld found that it was undisputed as a matter of law that the plaintiff was caused injuries by the negligence of the defendant. That's not an issue that was presented in plaintiff's motion for summary judgment and that's not a ruling that the trial court ever made. The motion for summary judgment that plaintiff has been discussing is found at from pages 491 to 499. There is no mention anywhere in that in that motion of medical records of medical treatment. There's no reference to the testimony or treatment of Dr. Lee or of any other medical provider. The motion for summary judgment is solely directed at the question of who is at fault for causing the impact between the vehicle traveling behind the plaintiff and plaintiff's and the court over the objection of defense found that there was no dispute that the accident was caused between the vehicle traveling behind plaintiff and plaintiff by the negligence of the defendant, but there was no finding that the plaintiff was proximally caused any injury by that accident or by the negligence of the defendant. In fact, the trial court seemed to go out of its way multiple times to explain to plaintiff that it had not made any finding at judgment that the plaintiff was injured as a result of any negligence by the defendant. The clearest indication is in the record on page 10 where before trial began the parties are disputing what the scope of the summary judgment ruling was of the trial court and the trial court says and I quote, so I did at our final pre-trial was I ruled that the accident was caused by the not gotten into the issue of damages on that. So the issue of damages is still for a determination by the jury and then proceeded to offer a statement of the case to the jury letting the jury know that it was undisputed that the collision between plaintiff's vehicle and the vehicle traveling behind plaintiff had been found by the court to be caused by the negligence of the defendant, but that the jury was responsible for deciding if the plaintiff carried his burden on proving that the accident proximately caused any injury to the plaintiff and that it was plaintiff's burden to prove the valuation of any injury. So counsel doesn't the law state the legal concept of liability comprises negligence plus proximate causation leaving only the amount of damages to be determined by the finder effect. Judge, I agree with you that the term liability in a very technical sense including in jury instruction 1.02 does include all the elements of negligence, but the trial court made pains to interpret its own order by making clear that that's not what it was finding liability. But the trial court repeatedly said I'm finding liability against the defendant and this is going to be a trial on damages. He the trial court said that numerous times. Well I think what the trial court said on the record of pages 11 to 12 was that it's found the defendant is liable and negligent for causing the accident. So I take your point that the technical legal definition for liability includes those things, but the trial court is using the terms liable and negligence in talking about the cause of the collision, not all the elements of a negligence claim. So I take your point, but the trial court was also telling us that it was leaving the issue of damages and of causation of damages to the jury. That's something that's found on the record of pages 11 and 12. The court repeated in post-trial hearings at 487 and 524 that the only order that it gave on summary judgment was just limited to whether the impact between plaintiff's vehicle and the vehicle behind it was caused by the negligence of the defendant and that's the only issue that was presented to the trial court in plaintiff's motion for partial summary judgment. Well counsel, what about how do you reconcile this Malone versus Pappish case which says where liability is directed against an automobile negligence defendant, there is no issue of proximate causation to be determined by the prior prior effect. Sure judge, I'd make a couple points about Malone. The most important I think is that's quite obviously a pre-Peach case. It was decided in 1994 and in Peach the Supreme Court made clear that the role has, the court has no role in deciding whether proximate cause of injury was something that was caused by the defendant's negligence. The language of the Supreme Court in Peach says that is uniquely a question to be determined by the jury. The other couple things I would point out in the Peach case is that defendant admitted liability there and the court was using it in that specific context that you're talking about. So the court, there were two cases in Malone, one in which the defendant admitted causation of injuries and the other was where the court found causation of those injuries or I should say damages. The final thing I would say on Malone, it's not clear to me that there was an award there for personal injuries. The introduction to that talks about property damage and there is a reference to it being filed as a personal injury case, but the discussion of the evidence in that case is limited only to property damage. So it's not clear to me that there was any finding of personal injury in that case and I think that that's something that's different. The evidence is undisputed that the liability for I should say the negligence for causing the accident is something that's caused by the defendant's negligence and there's obviously property damage. I think that's a different question and a different question than the jury in deciding whether someone has an injury. So I think Malone is a very different thing and I think Peach sets out the relevant standard that we use now, which is that it's unquestionably the province of the jury to decide specifically proximate cause. So from my perspective, I think it's clear from Judge Threlkeld's explanation, particularly at page 11 of the record, that he was not intending to issue any order regarding proximate cause of injuries, but I don't think that would have been on the table under Peach for the judge to be allowed to do if he had wanted to do it, which he didn't, and if it had been briefed by the plaintiff, which it wasn't in the motion for summary judgment. I think in order for the court to even have considered the issue of proximate cause of injuries, there would have needed to be some medical evidence presented by the plaintiff in the motion for summary judgment and there just wasn't. So I think the court should take Judge Threlkeld at his word at page 11 that his order was not limited or it did not include a finding of injuries and I think that the conduct of the parties after that reflect that that was our understanding. Certainly my argument. Counsel, wasn't it the trial court said repeatedly, he said I'm not finding that the plaintiff sustained any injuries, but if he did, my ruling is that you're liable for them, leaving the jury to issue to find that there was no damages. But what this was confusing, was it not? Oh, I don't think so, Judge. In order for plaintiff to prevail on instructional error, they have to prove that the jury was misled and that there was prejudice and that here turns on the jury understanding the distinction that's used in the jury instructions between liability and negligence in IPI 102. And the court explained in the post-trial hearing, and I think this makes sense, the idea that jurors were understanding this distinction between liability and negligence in 102 and that they were confused by how those instructions, the use of one word versus another, I don't think that reflects my understanding of the way lay jurors interpret jury instructions in words like negligence and liability. I think the instructions were clear and I think they were correct. I think the court did not enter a finding approximate cause of injury, which is why the court gave the version of 102 that used the word negligence, because that's appropriate if the court doesn't direct a finding on causation of injuries. But the committee comments do say, do they not, to that instruction that if liability's been found in favor of the plaintiff, you don't use negligence, you use liable. That's correct, Justice, and I think that what you're hitting on there is probably the most important part of interpreting a trial court's order. I think that's how you know for sure that Judge Threlkeld was not using liability in the same way that it's set out in 102, which is exactly what we argued at the jury instruction conference and on pages 4 to 10 of the record in the statement of the case. We argued that the version of 102 that the court gave that used negligence should be used because the summary judgment order did not include a finding of proximate cause and it did not include a finding of damages. And Judge Threlkeld agreed. He agreed that that's not what he meant when he used the word liability, that he was only meaning to say that the negligence of the defendant is what caused the collision. If Mr. Unsell was correct and the trial court had meant to establish all the elements of a negligence case, even though they weren't briefed in plaintiff's motion for summary judgment, then the judge would have used the term liability in the jury instructions in 102. But the fact that Judge Threlkeld, in particular, upon argument of all counsel, chose to use the word negligence I think tells you for sure that he was not talking about liability in the summary judgment order in the same context that Mr. Unsell and plaintiff is using it now. So I think that's a key thing for the court to recognize. The other thing, just on prejudice and confusing, I don't think there's any dispute that there would not have been a different result if the court had used the term liability instead of negligence in 102. And the reason I think that is that's something that the plaintiff conceded at argument on the post-trial motion. In talking to Judge Threlkeld about whether this made a difference, at page 520 of the record, plaintiff's counsel argued changing that word in 102 from negligence to liability, would that have made a difference here? And the answer is, I don't think that it would have changed the result. That means that there's no prejudice by giving the version of 102 that the court gave. If you're not going to get a different result, that means regardless of whether the instructions were correct, that means there's no prejudice. With my remaining time, I'd like to just touch on a couple things. Regarding plaintiff's motion for JNOV and for new trial, I would point out that these are questions for the jury, just unquestionably under the Peach case, and that the defense gave the jury ample reason to distrust the credibility of both plaintiff and of Dr. Lee. There was a reference made to visits after Dr. Lee, where even though plaintiff testified that he had ongoing problems, they need surgery, he was seeing other doctors time and time again, getting completely normal neck exams and back exams at a time where he'd just gotten done on direct exam, telling the jury that he was having all these problems. The jury also heard that he was seeing a separate orthopedist, because even though he told the jury he was having all these difficulties and pain, and they couldn't do anything, he broke his foot while racing dirt bikes down the hill. And he told that orthopedic doctor that he had no problems with his neck or back or anything other than his foot. So I think what the jury saw here was a guy who wasn't telling him the truth. And Dr. Lee specifically said two important things, that he was relying on a belief that plaintiff had given him an accurate medical history when he formed all of his conclusions in the case. And he also said that everything reflected in the MRI, those are all things which can and are caused by normal aging and natural wear and tear, not limited to traumas. And the MRI discussion is the exact same as what was in the Peach case. There was objective evidence in that case, which the court said is not enough. You don't have to just defer to a doctor because there's an objective radiological study. The same thing is true in the Danielson case. There was an MRI in that case that confirmed a meniscal tear. But at the end of the day, it's the jury who gets to decide if they're going to believe plaintiff, and it's the jury who gets to decide if they're going to trust the opinions of a guy like Dr. Lee. And we also gave the jury plenty of evidence to use to discount the opinions of Dr. Lee. The jury heard that he was relying on the subjective history of plaintiff, and we showed that it wasn't reliable. Dr. Lee testified that he typically only testifies for plaintiffs in these cases, and that he makes an awful lot of money doing it. There was question as to the post-accident photos, just like in the Peach case. And the jury heard that Dr. Lee was stepping steps in the treatment of plaintiff. Never prescribed medications, never put him on restriction, never ordered physical therapy, never did any of the things that Dr. Lee says a doctor should do before referring someone to surgery. And the jury could have also just decided that even if Dr. Lee was shooting it straight, they just think he got it wrong. Dr. Lee said, based on his last knowledge of plaintiff in 2019, he thought he was going to need multiple spinal surgeries. And then the jury heard that over the next five years, this guy made numerous times going to the doctor, making none of these complaints, and is racing dirt bikes. So even if he was well-meaning, the jury could have thought that Dr. Lee just got wrong and discounted his opinions. If there are no questions, I see my time's up. I'd ask the court to affirm the lower court. Any further questions, Justice Vaughn? No other questions, thank you. Justice Barberis? No, thanks. Thank you. Okay. Rebuttal? Yes. Your Honor, I believe the facts were that it was a bicycle and not a dirt bike. But aside from that, you pointed out very correctly the Malone decision. And it clearly says that when liability is admitted or directed, as it was here, especially in an automobile negligence, there is no issue of approximate causation. And what counsel hasn't pointed out that in the Peach decision, in all those other decisions, there was conflicting medical. There was other medical that was introduced. Counsel did a very good job in the cross-examination of Dr. Lee, and in pointing out the differences and the discrepancies in what was initially done and subsequent treatments. So what? That's the argument that you argued to the jury. And the fact that he says, well, Justice Threlkeld said that he did this, and he articulated as to why he did that. If Justice Threlkeld was wrong, then whatever the court might say subsequent to that as to why they did what they did, that's not an argument. That doesn't validate what was wrong. But what was wrong was that he entered a summary judgment on liability. And it was hotly contested. There was two competing motions for summary judgment, and counsel didn't like the fact of that. But counsel had the opportunity to correct it. He the last edited version. He gave that to court, and that is the law of the case. And based on the law of the case, the jury should be properly instructed. And the 102 should have been given exactly as it's written. And you're correct. The committee's decisions in that, if they're not right, then why instruct the jury? Why follow it? If you're going to bastardize it at each time, and that is why we had this confusing verdict. I believe that if it would have done properly, liability would have been properly instructed to the jury as to its definition. Verdict form A would have been given, and quite possibly, defendant would have only been awarded his medical bills, and maybe a little bit more, but he would have been awarded damages. I can't sit here and argue to you what the jury said, but trust me, the jury was confused. They were very confused. And they believed that they had to weigh in on liability, weigh in on, well, you know, did the accident really happen? Because we had the, you know, the phantom semi truck who left the scene. I think this is basic. I think that it was there, and I think that it should go back. Thank you, Your Honor. Any further questions, Justice Fung? Two. Usually on jury selection questions, you have to, before you can complain, you have to have used up all your preemptory challenges, and you did not in this case. And on jury instruction problems, you have to object at the time of the improper instruction and offer an alternative. And my understanding is you didn't do either one of those things either. No, no, we did. I mean, Your Honor, I mean, on the preemptories, yes, we, it didn't get to that far. This was the first general question of the array. Surely we would have never let her on, and we would have certainly- Those two jurors, jurors 14 and 15, never made it on the jury. Neither one of those- No, no, sir. They did not. It was the statements. So you had juror 14 made these statements to the general array. Then you had another juror who came in and said, yes, these statements made by juror 14 have affected me. Now I'm affected. So I think at that point in time, I think it's, you excuse them all and you start over. I mean, that's just, that's our argument. As far, we did submit, we submitted the liability instruction. We said, why? You said liable in the summary judgment. The modified version, the court went with, we briefed it. Your Honor, we filed, if you take a look at it, we filed a brief based on these instructions as to why you can't deviate from this. So yes, we just didn't go in down, but we took a whipping and that's, and that's clear in the record that the brief is attached that we filed during the jury instruction. I mean, when do you file memorandums and briefs and jury instructions? We did that, Your Honor, here. We, I mean, we fought as valiantly as we could. All right. Thank you. Thank you, sir. Thank you. Justice Barberis, anything further? I just want to follow up to what Justice Vaughn asked. My understanding is, as you pointed out, Mr. Unsel, that the initial poisoning of the jurors occurred very early in Hordauer by Judge Threkel. Afterwards, you had an opportunity to explore with the remaining jurors whether any of them felt the same way as Juror 15. Were any questions asked of any of the remaining jurors? How Juror 14's comments may have affected them? No, I mean, and like I said, I did, my office had the opportunity to try one case with you, but you know, when something like that happens, we did what we could. We went in chambers and we said, look, it's poisoned. I just think as a practical and a strategic matter, Your Honor, you don't do that. You don't draw attention to it. I the judge and the judge, then he sets, he sets the standards, the procedures. Okay, we're going to bring a man. We're going to talk to him. Are you guys influenced by this? Like the other juror. If Juror 15 doesn't come in, then I think you're fine. But once another juror and the one sitting right next to her comes in and you're right, I could have said, well, why don't you ask Juror 16? Why don't you? But you don't do that. And if I would have done that in your courtroom, I think you would have been angry at me. You just said, wait a minute, it's my courtroom. And so I'm going to, I'm going to inquire as to how I see fit. So, you know, you're right. We didn't, but I don't think we should be punished by not doing it. I think practically you have to look at where we're at. You don't want to draw attention to that. It was already out. The cat was out and it already affected one. Then I think the judge doing due diligence has to inquire as to, as to that effect. He didn't do it and we just left it alone. I mean, you're right. It was the, it was the start of trial and we knew we weren't starting very well with that happenstance, sir. Thank you both counsel for your arguments. We will take this matter under advisement and issue a ruling in due course.